UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH BECKER, ET AL.** | **CIVIL ACTION No. 09-226-JJB-DLD** |
| **VERSUS** | |
| **JASON GREEN, ET AL.** | |

- CONSOLIDATED WITH-

| | |
|---|---|
| **MILFORD WAMPOLD, III, ET AL.** | **CIVIL ACTION NO. 09-323-JJB-DLD** |
| **VERSUS** | |
| **PERSHING, INC., ET AL.** | |

-CONSOLIDATED WITH-

| | |
|---|---|
| **RODNEY STARKEY, ET AL.** | **CIVIL ACTION NO. 09-365-JJB-DLD** |
| **VERSUS** | |
| **KENDALL FORBES, ET AL.** | |

## MAGISTRATE JUDGE'S REPORT

The three above-captioned consolidated actions involve claims for damages arising out of the collapse of Stanford Group Company (SGC), Stanford Investment Bank, Ltd. (SIB), and Stanford Capital Management (SCM).[1]  Each of the three cases originally were filed in state court and later removed to this court based on defendants' allegations of federal question jurisdiction, 28 U.S.C. §1331, and each case now has pending motions to remand.  The instant matter comes before the court on referral from the district court of plaintiffs' motion to remand filed in *Joseph Becker, et al. v. Jason Green, et al,* 09-266-JJB-DLD (rec. doc. 4) and is opposed.  (rec. docs. 4 & 7).

---

[1] Stanford Group Company, Stanford Investment Bank, Ltd., and Stanford Capital Management will be referred to collectively as the "Stanford entities."

**Background**

Plaintiffs are various individuals who invested over time with the Standford Group entities. According to their petition, plaintiffs[2] purchased and/or renewed certificates of deposit (CD) from SIB based on investment advice from defendants, who served as employees and investment advisors of and for SGC and SCM (rec. doc. 1-7).[3] In late 2007 and early 2008, SIB began experiencing liquidity problems, but defendants, who were allegedly aware of the liquidity problems, continued to solicit plaintiffs to purchase and renew SIB CDs. The Stanford Group entities ultimately collapsed, and on February 17, 2009, a receiver (Ralph Janvey) was appointed by the court in *S.E.C. v. Stanford International Bank, Ltd., et al.,* 09-298, *N. D. Tex.* (Receivership Litigation) in order to prevent the waste and dissipation of the assets of defendants[4] to the detriment of the investors (CA 09-298-N, rec. doc. 10).

The order appointing the Receiver in the Receivership Litigation enjoins creditors and others from commencing suit, except in the Northern District of Texas (Receivership Court), "against the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or employee related to the Receivership Estate, arising out of the subject matter of [the Receivership Litigation]." Id. The order also restrains and enjoins creditors and others from taking possession, enforcing a lien, collecting or recovering on a claim, or setting off

---

[2] The plaintiffs in CA 09-266 are Joseph Becker, Don G. Landers, Gayle Unglesby, Lynn Phillipe, Jessie Romig, Thomas Kiebach, Terry Beven, M.D., Patsy J. Hebert, Patrick Haney, and Kevin Courville (rec. doc. 1-7).

[3] The defendants in CA 09-266 are Jason Green, Grady Layfield, Ron Clayton, Michael Word, Jay Comeaux, Hank Mills, Dirk Harris, ABC Ins. Co., XYZ Ins. Co., ABC Bond Co., RST Ins. Companies (rec. doc. 1-7)

[4] The defendants in the Receivership Litigation are Stanford International Bank, LTD., Stanford Group Company, Stanford Capital Management, L.L.C., R. Allen Stanford, James M. Davis, and Laura Pendergest-Holt.

debts against the Receivership Estate Assets. Id.  The Receiver soon brought a separate suit against numerous Stanford financial advisors in *Janvey v. Alguire, et al.,* 09-724-N (N.D. Tex), seeking to recover money paid to them by the Stanford Group entities.  Several of the defendants in this action are also named as defendants in the Receiver's suit.[5]

Plaintiffs filed suit against defendants in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana on March 17, 2009, alleging that despite numerous "Material Representations" and assurances by defendants that the SIB CDs were safe, liquid, and well-managed, the SIB CDs they purchased/renewed were actually highly speculative debt instruments similar to junk bonds (rec. doc. 1-7, ¶ 5-12).  Plaintiffs further allege that defendants induced them into purchasing or renewing the SIB CDs based on promised liquidity and stability, but defendants failed to perform due diligence on the SIB CDs or to independently verify information provided to them by SIB concerning the SIB CDs (Id., at ¶6).   Plaintiffs allege that SIB was not operating as a bank, but as a hedge fund or private bank account for Allen Stanford.  Id.  Plaintiffs claim that they suffered damages as a result of defendants' negligence, breach of contract, negligent representation, breach of fiduciary duty, unfair trade practices, and violations of Louisiana Securities Act (rec. doc. 1-7).  Plaintiffs seek damages[6] and coverage for their damages under defendants' various insurance policies.  Plaintiffs also seek to enjoin defendants from transferring or encumbering any of their assets and from destroying or disposing of books and records.

---

[5] The Receiver named numerous financial advisors, including Jay Comeaux, Grady Layfield, Ron Clayton, Michael Word, and Hank Mills, who are also named in this suit (rec. doc. 7).

[6] Plaintiffs seek damages, attorneys' fees, loss of income, interest, diminution of value cause by defendants (rec. doc. 1-7).

Defendant Jason Green removed this matter on April 17, 2009, alleging federal question jurisdiction (rec. doc. 1).[7] Defendant Green also filed a notice of stay (rec. doc. 3), which notifies the court of the order appointing the Receiver in the Receivership Litigation and enjoining litigation outside of the Northern District of Texas, and a motion to transfer this case to the Northern District of Texas (rec. doc. 6), where the Receivership Litigation is pending. Plaintiffs filed a motion to remand, which is now before the court for a report and recommendation.

**Arguments of the Parties**

Plaintiffs argue that the removal is procedurally defective because defendant Green failed to obtain the consent of all defendants and that the consent obtained was invalid because the attorneys purportedly representing the co-defendants are not licensed in Louisiana. Plaintiffs further argue that this action should be remanded to state court because defendants cannot prove their burden of establishing federal question jurisdiction. Plaintiffs contend that the petition raises only state law claims and does not allege a federal cause of action. Moreover, plaintiffs contend that the issue of whether or not their claims seek assets of the Receivership Estate and, therefore, are enjoined by the Receivership Order does not constitute a substantial question of federal law establishing federal jurisdiction because the issue would have to be resolved regardless of whether plaintiffs' claims proceed in state or federal court (rec. docs. 4-3, 10).

---

[7] Defendant Green represents that all served defendants consented to the removal. He attaches the consent of Jay Comeaux, through his attorney Matthew Coveler, and the consent of the remaining individual defendants, through their attorney Michael Stanley (rec. doc. 1-4, Exhibit B). The consent from Michael Stanley does not indicate which defendants he represents. Defendant alleges that the unidentified insurance company defendants were not served at the time the notice of removal was filed.

Defendant Green responds by arguing that he obtained the consent of all defendants who had been served at the time the notice of removal was filed and that the attorneys consenting on behalf of the co-defendants do not have to be licensed in Louisiana for their consent to be valid. Defendant argues that plaintiffs' petition states claims that are similar to those brought in the Receivership Litigation; therefore, the court must determine whether plaintiffs can proceed in light of the Receivership Order. Defendant also argues that federal question jurisdiction exists because plaintiffs' petition presents substantial issues of federal law: (1) plaintiffs' prosecution of this action is in direct violation of the Receivership Order and requires the court to determine whether the Receivership court has the authority to enjoin this action; (2) plaintiffs' claim for negligent representation against the individual financial advisor defendants requires plaintiffs to prove that the Stanford Group entities violated federal securities laws, similar to the allegations brought by the SEC in the Receivership Litigation; and (3) plaintiffs' allegation that defendants misrepresented that the operation of SIB and the sale of SIB CDs was in accordance with federal law presents a substantial federal question of whether defendants misrepresented matters of United States law (rec. doc. 7).

**Standard for Removal Based on Federal Question**

Federal courts are courts of limited jurisdiction; therefore, it is presumed that a suit removed to federal court lies outside this limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008).

A civil action may only be removed to federal court if it is founded upon a claim arising under the Constitution or laws of the United States. 28 U.S.C. § 1441(b); 28 U.S.C. § 1331. A case will only "arise" under federal law when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983); see also *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 680 (5th Cir. 2001). A "substantial federal question" exists "where the vindication of a right under state law necessarily turns on some construction of federal law." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In determining whether a "substantial federal question" exists, the court must consider whether "the state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314, 125 S.ct. 2362, 162 L.Ed. 2d 257 (2005). It is not enough that a court may have to interpret federal laws or regulations, and a federal court will not have jurisdiction if federal law or preemption is merely a defense to state claims, even if the defense of federal law or preemption is the only issue at stake. *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*, 463 U.S. at 12.

The "well-pleaded complaint" rule "makes the plaintiff the master of the claim," and "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Accordingly, even

where both federal and state remedies are available on a given set of facts, there will be no basis for removal on federal question jurisdiction if plaintiff elects in the state court petition to proceed exclusively under state law. *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). Further, a reference in a petition regarding a violation of unspecified federal laws does not establish a federal claim. Id.

All defendants served at the time the notice of removal is filed must join in the removal. 28 U.S.C. §1446(a). Co-defendants can join in the removal through written consent to removal by some person or entity having authority to act on a co-defendant's behalf, i.e., counsel for co-defendants. *Getty Oil Corp., a Division of Texaco, Inc. v. Insurance Co. of No. America*, 841 F.2d 1254, 1262 (5th Cir. 1988).

**Discussion**

Defendant carries the burden of proving that federal question jurisdiction exists by showing that plaintiffs' petition establishes either that federal law creates the cause of action or that plaintiffs' right to relief necessarily depends on a substantial issue of federal law. While defendant suggests that plaintiffs' claims present a federal question on the face of the petition, he does not cite to a single federal law or regulation referenced by plaintiffs in the petition. Plaintiffs' petition raises only state law claims: negligence, breach of contract, negligent representation, breach of fiduciary duty, unfair trade practices, and violations of Louisiana Securities Act (rec. doc. 1-7). Thus, there are no federal issues apparent from the face of plaintiffs' petition, and defendant does not really deny that plaintiffs have asserted claims under state law.

Defendant nevertheless argues that plaintiffs' claim for negligent representation raises federal issues in that plaintiffs will have to prove that defendants violated federal

securities laws in order to prove its claim of negligent representation.  Plaintiffs' petition sets forth 13 "Material Representations" allegedly made to plaintiffs by defendants (rec. doc. 1-7, ¶5, Representations A-M).  Paragraphs 27-68 further expands on 10 separate material representations that were negligently made by defendants.  (Id., Negligent Representations 1-10).  Count Three of plaintiffs' petition, entitled "Negligent Representation," contains allegations that defendants supplied false information to plaintiffs and did not exercise reasonable care or competence in verifying the accuracy of the information set forth in the "Material Representations" (rec. doc. 1-7, ¶¶78-83).  Thus, Material Representation I and Representation No. 5 must be read together to fully understand plaintiffs' claim.  The allegations state as follows:

Material Representations Made by Defendants
to Induce Plaintiffs to Purchase the SIB CD's

5.
Defendants represented the following to Plaintiffs at the time Plaintiffs purchased or renewed the SIB CD's (collectively "Material Representations"):

* * *

I.  SIB and SGC had retained legal counsel to structure the investment and based upon the opinion and advice of counsel, SIB CD's were marketed in accordance with the state and federal laws of the United States and that Stanford's legal counsel had in fact approved the marketing of the product in the United States.

* * *

46.

Representation No. 5.  Defendants negligently represented (i) that its legal counsel had reviewed the formation and operation of SIB and the marketing of the SIB CD's and (ii) that the operation of SIB and the sale of SIB CD's was in accordance with the law.

47.

>Defendants negligently represented (i) that its legal counsel had reviewed the formation and operation of SIB and the marketing of the SIB CD's and (ii) that the operation of SIB and the sale of SIB CD's was in accordance with the law. In truth and in fact, the operation was not in accordance with the laws of the United States based upon recent reports of the receiver of SGC. Had the defendants known that SIB was (sic) not be operated in accordance with the laws, Plaintiffs would not have purchased the SIB CD's.

(rec. doc. 1-7).

In summary, plaintiffs allege that defendants made certain representations concerning the formation and operation of the SIB and the marketing of the SIB CDs based on information obtained from their legal counsel.  Whether or not defendants actually received specific information from their legal counsel or whether defendants made representations without performing the necessary due diligence are not  issues of federal law and do not turn on an interpretation of a federal law.[8]

Nor is a federal issue created by plaintiffs' vague reference to the "laws of the United States" in its allegations or the mere fact that the court may have to refer to federal law in deciding plaintiffs' claims or in determining the standard of conduct.  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986); see also *Finance and Trading, Ltd. v. Rhodia*, 2004 WL 2754862 (S.D.N.Y. 2004)(court noted that borrowing of federal securities law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction.)  In summary, plaintiffs' claim of negligent

---

[8] In order to prove a claim of negligent misrepresentation under Louisiana law, plaintiffs must show that (1) there is a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation. *Keenan v. Donaldson Lufkin & Jenrette, Inc.*, 2009 WL 1959418 (5th Cir. 2009), citing *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 2005 WL 1309153 (E.D. La. 2005).

representation turns on the representations made by defendants, and the federal law issues that may arise in analyzing that single claim are not sufficiently substantial to confer federal question jurisdiction.[9]

The primary focus of defendant's arguments, however, center around this litigations' relationship to the Receivership Litigation. Defendant argues that plaintiffs' prosecution of this action is in direct violation of the Receivership Order and thus requires the court to determine whether the Receivership Court has the authority to enjoin this action, which defendant claims is a substantial issue of federal law. The question of authority, however, is not really what is at issue. No one has seriously questioned the authority of the Receivership Court. The real issue between the parties is more what constitutes "the Receivership Estate" (Receivership property); that is, whether or not the assets of the defendants, which are sought to satisfy plaintiffs' claims, are part of the "Receivership Estate."[10]

The plain language of the Receivership Order prohibits suit against "the Receivership Estate, any agent, officer, or employee related to the Receivership Estate, arising from the subject matter of [the Receivership Litigation]" in any jurisdiction other than

---

[9] Plaintiffs' claim of negligent representation, which makes no direct references to federal securities law, is distinguishable from the claims alleged in *Gobble v. Hellman*, 2002 WL 34430286 (N.D. Ohio), cited by defendant in support of removal, where the court found that removal based on a substantial issue of federal law was proper based on plaintiffs' "direct references to federal securities law and Defendants' alleged violations of those laws."

[10] It is notable that the rules governing SEC litigation are different from those governing other areas of the law providing for the appointment of a receiver or trustee to garner assets for the equitable distribution of the creditors/claimants. For example, in cases involving the Federal Deposit Insurance Corporation (FDIC) or cases that fall within the district court's bankruptcy jurisdiction, there are specific rules *authorizing* the removal of cases to the district court. See 28 U.S.C. §1452; 12 U.S.C. §1819(b)(2)(B). In contrast, in cases involving claims brought under the Securities Act of 1933 (such as the claims alleged in the Receivership Litigation), there are rules that *prohibit* removal, unless the case involves class action claims. See 15 U.S.C. §77v. No one cited nor could this court find any direct statutory authority specifically authorizing removal of actions "related to" Receivership Litigation. As with the FDIC and bankruptcy, Congress could easily have enacted such legislation had it wanted to do so, but it did not.

the Northern District of Texas, unless permission is obtained by the Receivership Court (rec. doc. 3, Exhibit 1). Defendant's counsel reports that she has discussed this litigation with counsel for the Receiver and was notified that "there should be no other action in this case, by any party, without leave of the Northern District of Texas" (Id, Exhibit 2). No one contends that these orders do not apply to cases pending in state court, nor does anyone contend that the orders are somehow more applicable in federal court than in state court. Insofar as the applicability of a stay to any particular litigation, it is not for this court or for the state court to decide, for example, what constitutes an asset of the "Receivership Estate." Those decisions are made by the Receivership Court and are binding on the parties and on state and federal courts alike. The Receiver and the Receivership Court's power to protect and marshal assets would be diminished if every court in the nation, state or federal, could make its own determination of what constitutes an asset of the "Receivership Estate."

Indeed, plaintiffs have stated that they are enjoined from pursuing their claims in both state and federal court until they obtain permission from the Receivership Court. In support of the motion to remand, plaintiffs' counsel has offered his affidavit stating that "[h]e and counsel for the Receiver have entered into an agreement not to move forward on the state court actions until there is a clear delineation of what constitutes Receivership property" (rec. doc. 14, Exhibit A). And, as stated earlier, it is not for this court or the state court to decide what constitutes Receivership property. Those battles are fought in the Receivership court and apply to the litigants in whatever forum they find themselves.[11] The

---

[11] Plaintiffs bring claims against the individual financial advisors and seek coverage under the insurance policies that allegedly provide coverage to the advisors. Currently, in the Receivership Court, the parties are litigating issues over what constitutes receivership property that affect this litigation, including issues over whether the financial advisors' assets/commissions should be frozen and eventually returned to

-11-

scope of the stay is thus equally applicable to plaintiffs whether the action is pending in state or federal court.

Defendant, therefore, has failed to prove his burden of establishing federal question jurisdiction, and this matter should be remanded to state court.  Because remand is recommended due to the lack of federal question jurisdiction, there is no need to address plaintiffs concerns over the procedural defects in the notice of removal.  Accordingly,

**IT IS RECOMMENDED** that plaintiffs' motion to remand (rec. doc. 4) should be **GRANTED** and this matter remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

Signed in Baton Rouge, Louisiana, on August 27, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

---

the Receivership Estate and whether the errors and omissions insurance policy covers claims against the individual Stanford Group advisors and officers.  The Receivership Court's decision on these issues will affect the outcome of claims asserted in other pending litigation, particularly plaintiffs' claims in this case.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**JOSEPH BECKER, ET AL.**              **CIVIL ACTION No. 09-226-JJB-DLD**

**VERSUS**

**JASON GREEN, ET AL.**

**- CONSOLIDATED WITH-**

**MILFORD WAMPOLD, III, ET AL.**      **CIVIL ACTION NO. 09-323-JJB-DLD**

**VERSUS**

**PERSHING, INC., ET AL.**

**-CONSOLIDATED WITH-**

**RODNEY STARKEY, ET AL.**         **CIVIL ACTION NO. 09-365-JJB-DLD**

**VERSUS**

**KENDALL FORBES, ET AL.**

<u>**NOTICE**</u>

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on August 27, 2009.

                                                         **MAGISTRATE JUDGE DOCIA L. DALBY**